UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- X
ELIZABETH CAIN, et al.,

        Plaintiffs,

    - against -

SHEILA BETHEA, et al.,

        Defendants.

-------------------------------------------------- X

NOT FOR PUBLICATION

MEMORANDUM AND ORDER
INCLUDING PRELIMINARY
     INJUNCTION
04-CV-3946 (JG)

A P P E A R A N C E S :

    ROBERT LITWACK
        42-40 Bell Boulevard, Suite 300
        Bayside, NY 11361
        *Attorney for Plaintiffs*

    DAVID S. HARRIS, ESQ.
        88-32 Sutphin Boulevard
        Jamaica, New York 11435
        *Attorney for Non-Party*
            *Mukesh Persaud*

JOHN GLEESON, United States District Judge:

        On September 13, 2004, Elizabeth Cain, Roxanne Rosario and Earl Alexis Rosario Cain filed this action alleging fraud, misrepresentation, and civil RICO violations carried out in part through the inducement of Elizabeth Cain to sign a fraudulent deed conveying her home -- 114-40 123rd Street, South Ozone Park, New York -- to Sheila Bethea. On May 5, 2006, I denied the defendants' joint motion to dismiss. The plaintiffs and six defendants have since filed cross motions for summary judgment, which I have referred to Magistrate Judge Cheryl L. Pollak for a report and recommendation. Judge Pollak is to hear oral argument on

those motions on May 10, 2007.

This memorandum addresses Elizabeth Cain's motion for a preliminary injunction staying her eviction from the property pending the outcome of this proceeding, or at least pending the outcome of the pending summary judgment motions. The opponent of the motion for a preliminary injunction is not a party to the case, but rather is the person who purchased the property at auction after a foreclosure action in state court. In a report and recommendation dated March 21, 2007, Judge Pollak recommended that I deny the motion. On April 27, 2007, I granted it instead. The reasons for that decision are set forth below.[1]

BACKGROUND

A.   The Underlying Action

Beginning April 24, 1997, Elizabeth Cain owned a 99% stake in the property. Her uncle Earl Cain owned the remaining 1% until his death in April 2004, at which time his 1% stake passed to Earl's wife Roxanne Rosario and Earl Alexis Rosario Cain. Only Elizabeth Cain made mortgage payments and paid taxes and insurance premiums on the property.

According to the plaintiffs, in the fall of 2001, Cain[2] contacted defendant American International Mortgage Bankers, Inc., ("American International") to discuss

---

[1] The March 7, 2007, letter motion that constitutes the instant application calls the relief sought a "temporary restraining order," but it is actually in the nature of a preliminary injunction. The application seeks to preserve the status quo pending the outcome of, at the very least, the pending motions for a preliminary injunction, and possibly any resulting trial. The letter opposing the application (from David S. Harris, Esq. counsel to Mukesh Persaud, who purchased the property in foreclosure and now seeks to evict Elizabeth Cain) properly characterizes the application as one seeking a preliminary injunction. Harris Letter dated March 19, 2007, at 2. Moreover, though he is a nonparty, Persaud has been afforded an opportunity to submit argument, both in writing and during a telephone conference with Judge Pollak on March 9, 2007. Under such circumstances, a motion for a temporary restraining order may be treated as a request for a preliminary injunction. *See* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2951. Therefore, it was appropriate for Judge Pollak to apply the procedure and standard that relate to a request for a preliminary injunction.

[2] Unless otherwise specified, "Cain" as used in this decision refers to Elizabeth Cain.

2

refinancing the premises. American International agents told Cain that she would need a co-signor in order to obtain a mortgage, and that they would be able to locate one for her. In April 2002, American International agents introduced Cain to defendant Sheila Bethea, whom they explained would act as a co-signor on the new loan from D&M Financial Corp. ("D&M").

According to the amended complaint, on April 25, 2002, Cain attended a closing of what she believed was a refinancing of her property, with Bethea acting as a co-signer on her new mortgage loan. Instead, Cain signed a deed conveying her property to Bethea. That same day, Bethea obtained a mortgage loan in the amount of $189,000 from D&M. D&M promptly sold the mortgage to another defendant in the action, Morequity. Cain made payments to Morequity for approximately one year, at which time payments ceased, but Cain has continued to reside at the property. Bethea did not make any payments on the mortgage at any time.

In March 2004, Morequity initiated foreclosure proceedings against Bethea and Cain in state court. On or about September 15, 2004, two days after filing this action, plaintiffs filed a notice of pendency, or *lis pendens*, giving notice of the action to any subsequent interest-holders in the property, and making "a person whose conveyance or encumbrance is recorded after the filing of the notice . . . bound by all proceedings taken in the action after such filing to the same extent as a party." N.Y. C.P.L.R. § 6501.

After denying the plaintiffs' motion to stay the state court proceedings pending the outcome of this action, No. 5962/04 (N.Y. Sup. Ct. April 22, 2005), the New York Supreme Court, Queens County, granted summary judgment in the state foreclosure action in favor of Morequity, labeling as "suspect" Cain's claims that she was not aware that she had deeded her property to Bethea. No. 5962/04 (N.Y. Sup. Ct. Nov. 16, 2005). On May 11, 2006, the court

3

signed a judgment of foreclosure and sale of the property. No. 5962/04 (N.Y. Sup. Ct. May 11, 2006). The plaintiffs then petitioned the Appellate Division, Second Department, for a stay of the foreclosure and sale. The Appellate Division denied a stay. No. 5962/04 (2d Dep't July 13, 2006). Mukesh Persaud purchased the property at auction for $290,000 on July 14, 2006.

B.    The Instant Motion

On January 26, 2007, Persaud commenced a holdover proceeding in state court in an effort to gain possession of the property. In a letter motion dated March 7, 2007, the plaintiffs argued that eviction should be stayed pending the resolution of the proceedings in federal court. I referred the motion to Judge Pollak for a report and recommendation.

On March 21, 2007, Judge Pollak recommended that the application for a stay be denied, citing the state court's determination in the summary judgment proceeding that Cain "'has not shown that there are issues of fact pertaining to any misrepresentations or fraud regarding the transfer of the subject premises and Morequity's mortgage to Bethea is valid.'" *Cain v. Bethea*, No. 04-3946, 7 (E.D.N.Y. March 21, 2007) (citing No. 5962/04, *3 (N.Y. Sup. Ct. Nov. 16, 2005)). On March 22, 2007, the Civil Court, Queens County, held eviction proceedings that concluded with an order of eviction. However, Cain and Persaud entered into a stipulation staying the enforcement of the eviction until April 30, 2007. I granted the stay on April 27, 2007.

DISCUSSION

In order to obtain preliminary injunctive relief, "a party must demonstrate (1) that it will suffer irreparable harm if the preliminary injunction is not issued, and (2) that it is likely to succeed on the merits of its claims or, in the alternative, has demonstrated sufficiently serious questions regarding the merits of the claims and the balance of hardships tips decidedly in its

favor." *L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258, 261-62 (2d Cir. 1996) (citing *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 967 (2d Cir.1995); *Jackson Dairy, Inc., v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)).

Plaintiffs contend that an injunction is appropriate because Cain will suffer irreparable harm if she is evicted, and because they have demonstrated sufficiently serious questions regarding the merits of their claims and a balance of hardships that tips decidedly in their favor. The plaintiffs further contend that the *lis pendens*, of which Persaud was aware when he purchased the property at the foreclosure sale, renders his use of the property subject to the judgment of this Court, and that an injunction is necessary to preserve the property so that a judgment in the plaintiffs' favor can have a meaningful effect. Finally, the plaintiffs argue that Persaud's purchase of the property was not executed in good faith.

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985). An irreparable harm is neither remote nor speculative, but is actual and imminent and cannot be remedied by an award of monetary damages. *See Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995). I conclude that the impact of Cain's eviction from her home of the last ten years would inflict such harm on her.

However, the standard also requires me to consider the hardship imposed upon Persaud if an injunction is imposed, and to balance that hardship against the hardship Cain would suffer in the event of eviction. Counsel for Persaud asserts that Persaud is "the only person being harmed by this litigation," since "he owns a house that he can do nothing with and yet he has to

5

maintain all of the carrying charges on it." Harris Letter dated March 19, 2007, at 3.

The hardship to Persaud is limited by three factors. First, he had notice of the litigation pending in this court, and is subject to its outcome. *See* N.Y. C.P.L.R. § 6501. Upon his purchase of the property at auction, Persaud should have been aware of the possibility that he would not be able to take possession of the property until the resolution of this matter. See *Calvagno v. Bisbal*, 430 F. Supp. 2d 95, 98-101 (E.D.N.Y. 2006) (granting preliminary injunction seeking a stay of eviction where the purchaser of property at auction "may not be a bona fide or good faith purchaser of the property" because plaintiffs informed purchaser of their pending mortgage fraud claims). Second, Persaud has never resided at the property, so the effect of an injunction on him will be monetary only. Third, Persaud's monetary interests will be protected, at least in part, in the event the defendants in this action prevail. As discussed below, I am prepared to grant Persaud's request that plaintiffs be required to deposit funds into an interest-bearing account during the pendency of this litigation.

When considering these factors in light of the irreparable and potentially devastating hardship that Cain would suffer in the event of eviction, I conclude that the balance of hardships clearly tips in the plaintiffs' favor.

I must also consider whether the plaintiffs have demonstrated sufficiently serious questions going to the merits of the case. "To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (*i.e.*, the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for

more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953). *See also Jacobson & Co., Inc. v. Armstrong Cork Co.*, 548 F.2d 438, 443-44 (2d Cir. 1977) (finding sufficiently serious questions going to the merits of the case where the discovery in the case raised "at least the inference" that the plaintiffs' theory of the case is correct, though noting that the issue "cannot be finally decided until . . . the court has the benefit of a full factual presentation").

Until this Court has had the benefit of a full presentation of the factual issues in this case -- a point that will not be reached at least until the pending summary judgment motions are decided -- there remain sufficiently serious questions going to the merits. Even a cursory glance at the transaction in question compels that conclusion. Plaintiffs contend that what was billed as a refinancing transaction actually duped the plaintiffs into conveying title to Cain's home. Defendants and Persaud respond that plaintiffs knowingly transferred title to defendant Bethea. But there is evidence that

- Bethea never bid on the property;

- Bethea made no down payment on the alleged agreement to sell the property;

- Bethea was told what the purchase price would be without even visiting the property;

- Bethea never purchased insurance for the property or paid taxes on it, or paid the mortgage, despite having been its registered owner;

- the copy of a $24,000 check in the closing file (purportedly representing funds delivered to plaintiffs' attorney at the closing) was fabricated from the actual check, which the drawee bank says was written for $24;

- there was no discussion at the closing or any other time of delivery of the premises to Bethea, or of a lease of the premises to Cain;

7

- -- other transactions involving the same players appear to include the same indicia of fraud; and

- -- both the mortgage broker (American International) and the Suffolk County Branch manager of the bankrupt mortgagor (D&M) have been convicted of mortgage fraud.[3]

There are numerous other facts that buttress the plaintiffs' contention that they were unsophisticated owners of real property who were swindled out of the title to the property by persons and entities who have victimized others as well.

The 2005 state court that granted summary judgment in favor of Morequity in the foreclosure action did not have the benefit of the facts brought to light in this case. It also ascribed dispositive significance to the fact that Elizabeth Cain had unclean hands, that is, that she knowingly used Bethea as a signatory to obtain her refinancing, even though Bethea would not truly be the obligor. But I am not convinced -- as the state court apparently was -- that Cain's less-than-wholesome effort to obtain what she was led to believe was a bailout mortgage loan disables her from attempting to prove the far more egregious fraud she claims was perpetrated on her, in part by the very entity that made the loan. At bottom, the state court's November 16, 2005 decision holds, as a matter of law, that the plaintiffs' claims of fraud are not to be believed. On the record now before me, I decline to make such a holding.

CONCLUSION

For the foregoing reasons, I granted the preliminary injunction staying Cain's eviction from the property, and hereby order that the stay remain in place pending further order of

---

[3] American International was convicted before Judge Hurley. *See* 02 CR 1298 (E.D.N.Y.). The D&M principal was recently convicted in state court. *See* hhtp://www.oag.state.ny.us/press/2007/feb/feb08b_07.html (last visited on May 8, 2007).

the Court.

Finally, I agree with Persaud that he is entitled to have the stay conditioned on the plaintiffs' payment of funds into escrow to compensate Persaud for a reasonable rent amount during the pendency of the stay. The amount shall be $1,000 per month. The first $1,000 shall be paid immediately; additional $1,000 installments shall be paid by the 27th of each month (beginning May 27, 2007) pending further order of the court. Payments shall be made to David S. Harris, counsel for Persaud who shall hold the funds in escrow.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 9, 2007
Brooklyn, New York